UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILROY E. JOHNSON, | No. 2:18-cv-1969 JAM DB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| LEE KELLEY, | |
| Defendant. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendant was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Before the court is defendant's motion for summary judgment. For the reasons set forth below, the court will recommend defendant's motion be granted.

**BACKGROUND**

This case is proceeding on plaintiff's original complaint, filed here on July 13, 2018 (ECF No. 1.) Plaintiff alleged that in May and August 2017 while he was incarcerated at California State Prison-Sacramento ("CSP-Sac"), he was seen by defendant Kelly, a registered nurse, because he was experiencing severe pain in his right shoulder. When he asked to be referred to a doctor, Kelly refused to do so, telling him that the doctor was very busy. As a result, plaintiff contends that he suffered several months of severe pain until he was transferred to Kern Valley

State Prison ("KVSP"). He was seen by a doctor at KVSP and diagnosed with impingement syndrome. Plaintiff seeks damages for his pain and suffering.

On screening, the court found plaintiff stated a potentially cognizable claim against defendant for deliberate indifference to his serious medical needs in violation of the Eighth Amendment. (ECF No. 8.) Defendant filed an answer to the complaint on January 29, 2019. (ECF No. 17.) On January 2, 2020, defendant filed the present motion for summary judgment. (ECF No. 39.) Plaintiff filed an opposition (ECF Nos. 42, 43) and defendant filed a reply (ECF No. 44).

**MOTION FOR SUMMARY JUDGMENT**

Defendant argues that she was not deliberately indifferent to plaintiff's shoulder pain and that she is entitled to qualified immunity.

**I. Summary Judgment Standards under Rule 56**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

2

essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party typically may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. However, a complaint that is submitted in substantial compliance with the form prescribed in 28 U.S.C. § 1746 is a "verified complaint" and may serve as an opposing affidavit under Rule 56 as long as its allegations arise from personal knowledge and contain specific facts admissible into evidence. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (accepting the verified complaint as an opposing affidavit because the plaintiff "demonstrated his personal knowledge by citing two specific instances where correctional staff members . . . made statements from which a jury could reasonably infer a retaliatory motive"); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); see also El Bey v. Roop, 530 F.3d 407, 414 (6th Cir. 2008) (Court reversed the district court's grant of summary judgment because it "fail[ed] to account for the fact that El Bey signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. His verified complaint therefore carries the same weight as would an affidavit for the purposes of summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**II. Legal Standards for Eighth Amendment Medical Claim**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986); Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

What is needed to show unnecessary and wanton infliction of pain "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment,

4

however, a prisoner must allege and prove that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. Wilson, 501 U.S. at 298-99.

For an Eighth Amendment claim arising in the context of medical care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer, 511 U.S. at 834. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06; see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth

Amendment rights."); McGuckin, 974 F.2d at 1059 (same). Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

**III. Statements of Facts**

Defendants filed a Statement of Undisputed Facts ("DSUF") as required by Local Rule 260(a). (ECF No. 39-2.) In his opposition brief, plaintiff provided a "Statement of Undisputed Material Fact." (ECF No. 42 at 2-7) Plaintiff filed two additional documents which list his "undisputed" facts. (ECF Nos. 43 (hereafter "PSUF") and 43-2.) Each of these three statements appears to recite the same list of facts plaintiff feels are undisputed. Plaintiff also submitted a "Statement of Disputed Facts" in which he addresses some of the facts in the DSUF. (ECF No. 43-1.)

In light of plaintiff's pro se status, the court has reviewed plaintiff's filings in an effort to discern whether he denies any material fact asserted in defendants' DSUF or has shown facts that
////

6

are not opposed by defendants. The court considers the statements plaintiff made in his verified complaint and in his sworn statements, of which he has personal knowledge.

Below, the court lists the undisputed, material facts. Disputed material facts are addressed in the discussion of the merits of defendants' motion below.

- In May and August 2017, plaintiff was an inmate and defendant was a registered nurse at CSP-Sac. (Comp. (ECF No. 1); DSUF #2.)
- On May 18, 2017, plaintiff submitted a health care service request form. He complained of having "severe pain" in his right shoulder for about a month. (ECF No. 39-5 at 6.)
- In response to the request, defendant saw plaintiff on May 19 or 22, 2017. (DSUF #2; PSUF at 1.[1])
- According to defendant's notes from the exam, plaintiff told defendant that he exercised 2-3 hours per day and said his shoulder might be hurting due to "too many dips." (DSUF #3; ECF No. 39-5 at 17.) Plaintiff does not dispute those statements. Plaintiff contends he also told defendant that his shoulder pain was preventing him from functioning normally in his daily activities. (PSUF at 1.) Defendant does not dispute that statement.
- In her notes from the exam, defendant also wrote that plaintiff's shoulder showed no signs of swelling or any deformities and that he had full range of motion. (ECF No. 39-5 at 19.)
- At the time defendant saw plaintiff in May, plaintiff was already receiving oxcarbazepine for chronic right hip pain. He also had access to nonsteroidal anti-inflammatory medications and Tylenol free of charge without a prescription. (DSUF # 8.)

////

---

[1] The parties dispute the exact dates that plaintiff was seen by defendant in May and August 2017. The precise dates of those visits are not material to plaintiff's claims so both dates are included here.

- At the May appointment, defendant provided plaintiff with information regarding shoulder pain that included the recommendation that he rest his shoulder. (ECF No. 39-5 at 11-13.)
- On July 10, 2017, plaintiff saw his primary care physician for a rash. The physician's notes do not reflect any concerns expressed by plaintiff about shoulder pain. (DSUF #12, 13.)
- On August 10, 2017, plaintiff submitted a health care service request form. He complained of pain in his right hip and asked to see a doctor. (DSUF #14; PSUF at 3; ECF No. 39-5 at 5.)
- On August 14 or 15, 2017, defendant saw plaintiff in response to that request. (DSUF #15; PSUF at 4.)
- At that August visit, plaintiff raised the issue of his shoulder pain in addition to his hip pain. (PSUF at 4.)
- According to plaintiff, defendant stated during her exam of his shoulder that it felt bruised. (PSUF at 4.) Defendant does not dispute that statement.
- Plaintiff was not referred to a doctor or provided any additional medication as a result of the August exam. (PSUF at 4.)
- On September 22, 2017, plaintiff was transferred to KVSP. (DSUF #24; PSUF at 5.)
- On November 1, 2017, plaintiff submitted a health care services request form regarding pain in his right shoulder. (DSUF #26; PSUF at 5.)
- In response to the request, plaintiff was seen by a nurse at KVSP and had x-rays of his shoulder. (DSUF #27-35; PSUF at 5-6.)
- The x-rays were "negative" and did not reveal any problems with plaintiff's shoulder. (DSUF #34; PSUF at 6.)
- At a November 17, 2017 appointment with Dr. Wang at KVSP, Dr. Wang diagnosed plaintiff with shoulder impingement syndrome. He increased plaintiff's dose of oxcarbazepine, advised plaintiff to continue using capsaicin cream, and

8

|   |   |
|---|---|
| 1 | advised plaintiff to continue range of motion exercises. (DSUF #36-39; PSUF at |
| 2 | 6.) |
| 3 | • On December 14, 2017, Dr. Wang gave plaintiff a steroid injection. (DSUF #40; |
| 4 | PSUF at 6.) Plaintiff reported that the steroid injection helped his pain. (PSUF at |
| 5 | 6.) |

**IV. Analysis**

Plaintiff complains that defendant failed to do two things at the May and August 2017 appointments. First, he contends she should have ordered an x-ray. Second, he contends defendant should have referred him to a doctor. The undisputed facts set out above show that the x-ray taken in November 2017 was "negative." Therefore, whether or not defendant should have ordered an x-ray, plaintiff suffered no injury as a result of her failure to do so. He has not demonstrated that a negative x-ray would have resulted in different medical care. Because there are no disputed material facts on this point, this court will not consider it further.

With respect to plaintiff's claim that defendant should have referred him to a doctor, plaintiff fails to show defendant acted with deliberate indifference to a serious medical need. For purposes of this analysis, this court will assume plaintiff's shoulder pain was sufficiently serious under the Eighth Amendment. The question, then, is whether there are material disputed facts showing that defendant acted with deliberate indifference when she refused to refer plaintiff to a doctor for his pain.

Plaintiff focuses on defendant's alleged statements at his May exam that he was frequently seen by medical staff and "there is never anything wrong with you." (PSUF at 1.) He also focuses on defendant's alleged responses to his request to see a doctor at both the May and August exams. Plaintiff alleges defendant stated both times, "the doctor's line is full;" "he doesn't want to see you;" and "he's very busy." (PSUF at 2, 4.) While these statements could demonstrate that defendant was acting with deliberate indifference, plaintiff must also show that defendant's conduct was "medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). He has not done so.

////

|   |   |
|---|---|
| 1 | Defendant presents the declaration of Dr. Bennett Feinberg, the Chief Medical Consultant |
| 2 | for the California Correctional Health Care Services ("CCHCS") Office of Legal Affairs. (ECF |
| 3 | No. 39-4.) Dr. Feinberg reviewed plaintiff's medical records. Based on those records, Dr. |
| 4 | Feinberg opined that defendant's failure to refer plaintiff to a doctor in May and August of 2017 |
| 5 | did not worsen or prolong plaintiff's shoulder condition. (Id. ¶18.) According to Dr. Feinberg, |

> Shoulder impingement syndrome is not a serious medical condition. It is a common type of tendinitis generally caused by overuse, consistent with Plaintiff's experience after exercising too much. The initial treatment is similar to other overuse tendinitis syndromes such as tennis elbow: rest, especially avoiding or decreasing activities that cause pain; and taking NSAIDs to help reduce pain and inflammation.

(Id.)

Defendant also presents the declaration of a registered nurse, R. Rada, who is the Nurse Consultant Program Review Lead for CCHCS, Nursing Services Branch. (ECF No. 39-6.) She reviewed plaintiff's medical records and opined that defendant's "assessment and interventions" during the May 2017 and August 2017 appointments "were appropriate and a referral to a PCP was not warranted at [either] time." (Id. ¶¶ 4, 5.)

Plaintiff provides nothing besides his own opinion to contradict the medical opinions of Dr. Feinberg, RN R. Rada, and defendant. Mere differences of opinion between a prisoner and prison medical staff as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058. Moreover, plaintiff did see a physician in July 2017. He does not contend that he discussed his shoulder pain at that visit. The physician's notes reflect no discussion of plaintiff's shoulder pain. Plaintiff's complaint that he suffered "months" of pain as a result of defendant's refusal to refer him to a doctor is belied by this undisputed fact.

Finally, the fact that plaintiff eventually did see a doctor in November 2017 and was later provided a steroid injection does not demonstrate that it was medically unacceptable prior to that time to recommend that plaintiff rest his shoulder and try anti-inflammatory medications. This is the conservative course of initial treatment described by Dr. Feinberg.

In sum, plaintiff fails to raise issues of material fact regarding defendant's conduct. He does not show that the recommendations to rest his shoulder were medically unacceptable and

that defendant acted with deliberate indifference to his shoulder pain.  See Shamburger v. Risenhoover, 471 F. App'x 596, 597 (9th Cir. 2012) (affirming summary judgment where defendant-nurse allegedly failed to refer plaintiff to a doctor because plaintiff's disagreement with the nurse's chosen course of treatment was not sufficient to constitute deliberate indifference); Hunnicutt v. Cate, No. C 12-380 JST (PR), 2013 WL 4776527, at * (N.D. Cal. Sept. 5, 2013) ("A nurse's failure to refer an inmate to a doctor is evidence of indifference to a serious medical need only when the inmate's symptoms or other objective evidence indicate that a doctor's care is required."); Washington v. Harrington, No. 1:11-cv-0848-MJS (PC), 2012 WL 3763964, at *5 (E.D. Cal. May 24, 2012) (finding no deliberate indifference where a nurse allegedly failed to refer prisoner to a doctor after providing care in response to complaints of difficulty breathing and coughing), aff'd, 549 F. App'x 679 (9th Cir. 2013).  Accordingly, this court will recommend defendant's motion for summary judgment be granted.[2]

For the foregoing reasons, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (ECF No. 39) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 12, 2020

DLB:9/DLB1/prisoner-civil rights/john1969.msj fr

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

---

[2] Because this court finds summary judgment appropriate on the merits of plaintiff's claims, it need not reach the issue of qualified immunity.

11